**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds, | ) ) ) ) ) ) ) ) ) ) | Case No.: 26 cv 3969 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ANGEL CLEANING SERVICE OF ILLINOIS, INC., an Illinois corporation | ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT**

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace, Amy Carollo, G. Ryan Liska, and Sara S. Schumann, and for their Complaint against Angel Cleaning Service of Illinois, Inc. (hereinafter "Angel Cleaning" or the "Company"), state as follows:

**COUNT I**

**(Failure to Pay Benefit Contributions)**

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

1

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Angel Cleaning is an Illinois corporation and at all times relevant did business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company entered Independent Construction Industry Collective Bargaining Agreements which binds the Company to all existing and successive area-wide Collective

Bargaining Agreements, which went into effect on June 16, 2022 ("Agreement"). A copy of the Independent Construction Industry Collective Bargaining Agreements which adopt and incorporate the area-wide negotiated Collective Bargaining Agreements and also binds the Company to the Funds' respective Agreements and Declarations of Trust are attached hereto as Exhibit A.

7. The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA" or collectively with all other funds identified in this Paragraph as "Ancillary Funds") to act as an agent in the collection of contributions due to those Funds.

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the

3

Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  The Company is obligated to pay between 10% and 20% liquidated damages on late-paid contributions including 20% liquidated damages on late-paid, Pension, Welfare, Retiree Welfare and Training Fund contributions, plus interest at a rate of 12% from the date the contributions were due until the contributions are paid.

9.	The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.	The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11.	Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company performed covered work during the time period of June 16, 2022 forward.  The Funds demanded an audit, and the Company failed to submit all of its books and records to an audit for the time period of June 16, 2022 forward, thereby depriving the Funds of information needed to administer the Funds and jeopardizing the benefits of the participants and beneficiaries.

12.	The Company also failed to timely pay its July, August, and October 2024 and February and May 2025 benefits reports.  It owes $708.98 in accumulated liquidated damages on these late paid reports.

13.	Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, the terms of the Agreement, and the Funds'

4

respective Trust Agreements, the Company is liable to the Funds for the unpaid contributions revealed as owing pursuant to the audit, as well as liquidated damages, interest, and attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Angel Cleaning Services of Illinois, Inc.:

a.      ordering the Company to submit all books and records to an audit for the period of June 16, 2022 forward;

b.      entering judgment in sum certain in Plaintiffs' favor against Defendant Angel Cleaning for the amounts due on audit including unpaid contributions, interest, liquidated damages, accumulated liquidated damages on late-paid reports, audit costs, and Plaintiffs' attorneys' fees and costs; and

c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Books and Records to an Audit)

14.     Plaintiffs reallege and incorporate herein paragraphs 1 through 13 of Count I.

15.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

16.     Notwithstanding the obligations imposed by the Agreement, the Company performed covered work during the time period of June 16, 2022 forward and failed to submit its books and records to a requested audit to determine dues contributions compliance for the time period of June 16, 2022 forward, thereby depriving the Union of information.

17.    Pursuant to the Agreement and federal common law, Angel Cleaning is liable for the unpaid union dues revealed by the audit, if any, as well as liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Angel Cleaning Service of Illinois, Inc., ordering:

a.    the Company to submit its books and records to an audit for the period of June 16, 2022 forward;

b.    entering judgment in favor of the Funds and against Defendant Company for the amounts due on the audit, if any, including the Union dues and liquidated damages owed together with all accumulated liquidated damages on late-paid reports, audit costs, attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate; and

c.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

April 9, 2026                                    Chicago & Vicinity Laborers' District Council
                                                Pension and Welfare Funds,

                                                By:  /s/ Amy Carollo

Amy Carollo
Laborers' Pension and Welfare Funds
Office of Fund Counsel
11465 W. Cermak Rd.
Westchester, IL 60154
(312) 692-1497

6

# LiUNA!



## CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
**AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA**
999 McClintock Drive • Suite 300 • Burr Ridge, IL 60527 • Phone: 630/655-8289 • Fax: 630/655-8853

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **ANGEL CLEANING SERVICE OF IL** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. Labor Contract. The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Chicagoland Associated General Contractors ("CAGC"), the Great Lakes Contractors Association ("GLCA"), the Illinois Road and Transportation Builders Association ("IRTBA"), the Mason Contractors Association of Greater Chicago ("MCAGC"), the Underground Contractors Association ("UCA"), the Chicago Area Drywall Supply Association ("CADSA"), the Chicago Area Independent Construction Association ("CAICA"), the Chicago Area Rail Contractors Organization ("CARCO"), the Chicago Area Scaffolding Association ("CASA"), the Contractors Association of Will and Grundy Counties ("CAWGC"), the Concrete Contractors Association of Greater Chicago ("CCAGC"), the Chicago Demolition Contractors' Association ("CDCA"), the Illinois Environmental Contractors Association ("IECA"), the Illinois Small Pavers Association ("ISPA"), and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. Total economic increase. The Employer shall pay its employees a total economic increase of $2.45 per hour effective June 1, 2021, $2.50 per hour effective June 1, 2022; $2.55 per hour effective June 1, 2023; $2.60 per hour effective June 1, 2024, and $2.65 per hour effective June 1, 2025, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2021, the minimum wage rate shall be $45.90 per hour.

4. Checkoff Deductions and Remittances. The Employer shall deduct from the gross payroll earnings of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross payroll earnings and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. Work Jurisdiction. This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended, which is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. Subcontracting. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. Fringe Benefits. The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. Contract Enforcement. All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit Union dues, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph allows the Union to take any other legal and economic action, including but not limited to all remedies at law or equity. It is understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. Termination. This Agreement shall remain in full force and effect from June 1, 2021 (unless dated differently below) through May 31, 2026, and shall continue thereafter unless there has been given written notice, by certified mail by either party, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. Execution. The signatory below warrants his or her receipt of the applicable association Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: **June 16**, 20**22**

**ACCEPTED:**
Laborers' Local Union No **6**

By: **Rex 36**

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

Applicable association collective bargaining agreement(s): **✗CAICA**

**Angel Cleaning Service OF Illinois**

FEIN No: ████████

By: **MARIA SCOTT   President**
(Print Name and Title)

_____
(Signature)

**8543 S Stony Island**
(Address)

**Chicago, IL   60617**
(City, State and Zip Code)

**773-718-0107**
(Telephone/Telefax)

**Mariscott886@yahoo.com**
(Email Address)

(ver. 2021)          **WHITE - LOCAL UNION** • **CANARY - TRUST FUND** • **PINK - DISTRICT COUNCIL** • **GOLD - EMPLOYER**

**Exhibit A**